IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AYALEW MERGIA,

        Plaintiff,                No. 2:08-cv-1159 JAM JFM PS

    vs.

ANNE MARIE ADAMS,

        Defendant.           FINDINGS AND RECOMMENDATIONS

_____/

        The parties' cross-motions for summary judgment came on regularly for hearing June 4, 2009. Plaintiff appeared telephonically in propria person. Christie B. Mitchell appeared for defendant. Upon review of the motion and the documents in support and opposition, upon hearing the arguments of plaintiff and counsel and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

        This court has jurisdiction over the complaint pursuant to 8 U.S.C. § 1183a(e)(1), which provides, in pertinent part:

> An action to enforce an affidavit of support executed under subsection (a) of this section may be brought against the sponsor in any appropriate court . . . by a sponsored alien, with respect to financial support.

Id.

Defendant seeks summary judgment on the grounds that plaintiff has already litigated the issue of the Affidavit of Support, as well as his constitutional claims, and asks the court to enforce the terms of the family law judgment entered August 7, 2007, in which the parties stipulated that spousal support would forever terminate on October 31, 2007. Defendant also contends that the Affidavit of Support (Form I-864) was "bilaterally rescinded on May 9, 2007" and is unenforceable because it would change the terms of the judicially supervised marital settlement agreement entered into judgment on August 7, 2007. Defendant argues that plaintiff's civil rights claim fails because defendant is not a state actor and did not act under color of state law.

In his cross-motion for summary judgment, plaintiff contends defendant and her attorneys have engaged in "fraudulent and deceptive acts" that have caused both state and bankruptcy courts to engage in unconstitutional conduct.[1] Plaintiff argues he was deprived of a reasonable opportunity to have his federal claims heard in both state and bankruptcy courts. As plaintiff argued in bankruptcy court, plaintiff renews his request to have the state court judgment declared null and void, based on the deprivation of his right to have his federal claim heard, rather than denied based on a lack of jurisdiction. Plaintiff also asks this court to enforce the Affidavit of Support.

Undisputed Facts[2]

Plaintiff is an Australian citizen. Defendant is a United States citizen. On June 30, 2005, defendant signed a Federal Affidavit of Support (Form I-864)(hereafter "Affidavit of Support.") (Deft.'s Ex. F at 7 [Docket No. 36-4 at 7.])

---

[1] Plaintiff also contends that defendant filed an untimely answer which entitles him to summary judgment. Plaintiff, however, is mistaken. Service of process was accomplished on January 26, 2009. Defendant filed an answer on March 6, 2009. Plaintiff did not seek entry of default against plaintiff when she failed to file her answer within thirty days from the date she was served. Although defendant's answer was a few days late, it does not entitle plaintiff to entry of summary judgment.

[2] Unless otherwise noted, these facts are undisputed.

1      Plaintiff and defendant were married on September 27, 2004.  Plaintiff was

2 admitted to the United States under a family visa on October 10, 2005.

3      Plaintiff and defendant separated on April 17, 2006, and defendant filed a

4 dissolution petition in the Sacramento Court Superior Court in 2006.  (Case No. 06FL0391.)  The

5 record is unclear whether either party listed the Affidavit of Support in their moving papers in the

6 divorce action.  However, plaintiff states that

> During the pendency of the dissolution proceeding, I sought
> enforcement of the Affidavit against Defendant.  The Sacramento
> Superior Family Court, however, abused its discretion; refused and
> denied my right to enforce the Affidavit on jurisdiction grounds.

(Complt. at ¶ 13.)

     On June 20, 2006, the Sacramento County Superior Court ordered defendant to pay plaintiff $3,500.00 each month in spousal support.  On April 25, 2007, the status of the marriage was bifurcated and the marriage was dissolved.  (Docket No. 35-2 at 2.)

     On May 9, 2007, the parties attended a mandatory settlement conference in California Superior Court, and entered into the following stipulation:

> Petitioner will pay to Respondent the sum of three thousand five
> hundred dollars ($3,500.00) per month on the lst day of each
> month starting May 12, 2006 and continuing until and through
> October 31, 2007.  The parties stipulate and agree that spousal
> support will forever terminate on October 31, 2007.  At that time,
> no court will have jurisdiction to award spousal support to either
> party.  The duration of support shall not be continued for any
> reason, no matter if there is a change in circumstances.

(Deft.'s Ex. A at 4 and 13.)  This handwritten agreement was initialed by both parties and signed by both parties.  (Id., at 13.)  This stipulation was finalized and entered into judgment on August 7, 2007.[3]  (Id.)

---

[3] Plaintiff disputes the validity of this document; however, defendant has provided a certified copy of the judgment.  (Deft.'s Ex. A.)  Page two of the judgment contains the signature of Judge Borack who heard the family law matter on May 9, 2007, and refers to an attached Stipulation and Order.  (Id.)  Appended to the judgment is an endorsed filed copy of the Family

1    Plaintiff's family law attorney presented the Affidavit of Support (Form I-864) as
2 evidence in the state court action on November 29, 2007.  (Docket No. 45 at 3.)  Plaintiff
3 contends he was not aware of the Affidavit of Support on May 9, 2007.  (Docket No. 45 at 3.)
4 Plaintiff avers that defendant's attorney argued the state court lacked jurisdiction as it was an
5 immigration issue; the court declined to hear the issue, stating it must be heard by the federal
6 court.  (Docket No. 45 at 3.)
7    On January 24, 2008, trial was held in the pending dissolution proceeding in state
8 court.  (Docket No. 36-7 at 10.)
9    Plaintiff contends he attempted to submit the Affidavit of Support again and the
10 relief judge who presided at the final dissolution trial declined to hear the issue on the grounds of
11 lack of jurisdiction.  (Docket No. 45 at 4.)
12    On February 5, 2008, plaintiff filed for bankruptcy.  (Case No. 08-21325-B-7.)[4]
13 Plaintiff did not list the Affidavit of Support as an asset in the bankruptcy proceedings.  (Id.,
14 Petition filed February 5, 2008, at Schedule B, page 1.)[5]
15    For some unexplained reason, two judgments were entered on the reserved issues
16 in the dissolution action:
17    1.  On February 14, 2008, judgment on reserved issues was entered in the
18 Sacramento County Superior Court Case No. 06FL03291.  (Docket No. 36-7 at 9.)  Trial was
19 held on January 24, 2008 before Judge Michael Byrne.  (Docket No. 36-7 at 10.)  Defendant and

---

Law Stipulation and Order entered May 9, 2007.  (Id.)  This stipulation notes both plaintiff and defendant were present on May 9, 2007 and contains both their signatures and sets of initials and is also signed by Judge Borack.  (Id.)

[4] A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). All information regarding bankruptcy filings were accessed directly from the Bankruptcy Court using CM/ECF.

[5] Item 17 on Schedule B states: "Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.  Give particulars."  Id.

4

her attorney and plaintiff were present in court. (Docket No. 36-7 at 10.) Judge Byrne signed this judgment on February 14, 2008. (Docket No. 36-7 at 11.)

    2. On March 17, 2008, judgment on reserved issues was entered in the Sacramento County Superior Court Case No. 06FL03291. (Docket No. 36-7 at 6.) This judgment noted that trial was held on January 24, 2008 in Department 120 before Judge Michael Byrne; defendant and her attorney and plaintiff were present in court. (Docket No. 36-7 at 7.) This judgment was signed by Judge James E. McFetridge. (Docket No. 36-7 at 8.)

    However, on May 18, 2009, plaintiff filed complete copies of the "Judgment After Trial on Reserved Issues," prepared by defendant's counsel. (Docket No. 45, Pl.'s Exs. R-1 & R-2.) Although both judgments were signed on different dates by different judges, the substantive language included in the 4 page judgments is the same. These judgments do not expressly address the federal Affidavit of Support, but state:

> Although the court found Respondent's argument for continued spousal support to be interesting, the court notes that spousal support was terminated by a prior Judgment and that the argument Respondent made is not one to be heard in this family law forum.

(Id. at 2.)

    On April 16, 2008, defendant filed an Adversary Case (No. 08-02206-B) to plaintiff's bankruptcy petition.

    Plaintiff was granted a discharge in his backruptcy proceeding on May 20, 2008. (Id., Docket No. 17.)

    On May 27, 2008, plaintiff filed the instant action.

    On June 3, 2008, plaintiff filed a declaration in the Adversary Action in which he argued he was entitled to support under the federal Affidavit of Support (Form I-864). (Adversary No. 08-02206-B, Docket No. 10.)

    On July 30, 2008, defendant filed a motion for relief from stay in the bankruptcy action. (Id., Docket No. 20.) On August 18, 2008, plaintiff sought to have the state court judgment rendered null and void by the bankruptcy court. (Id., Docket No. 27.)

On September 2, 2008, defendant's motion for relief was denied without prejudice based on defendant's failure to demonstrate she was legally entitled to relief. (Id., Docket No. 33.) The bankruptcy court denied plaintiff's request based on the Rooker-Feldman doctrine.[6] (Case No. 08-21325-B-7, Docket No. 33; see also Deft.'s Stmt., at 3.)

On September 9, 2008, defendant renewed her motion to annul the automatic stay. (Case No. 08-21325-B-7, Docket No. 37.) On October 14, 2008, defendant's motion was granted in part. The automatic stay was modified to validate the "Judgment on Reserved Issues" entered in state court and the relief was made retroactively effective as of February 5, 2008. (Id., Docket No. 53.) The bankruptcy court found that because the dissolution trial was conducted pre-petition and the minute order was signed and entered pre-petition, entry of the state court judgment was a mere ministerial act which occurred post-petition. (Id.) Granting the motion allowed the bankruptcy court to consider the minute order, judgment and underlying record to determine the issue of dischargeability. (Id.)[7]

On December 16, 2008, defendant filed a motion for summary judgment in Adversary Action No. 08-02206-B. (Id., Docket No. 60.) On February 3, 2009, defendant's motion was heard; plaintiff failed to oppose the motion or appear at the hearing. (Id., Docket No. 68.) The bankruptcy court granted defendant's motion in part. The court found defendant had met her burden in showing the $95,179.05[8] in debt fell within the exception to the

---

[6] A federal district court does not have jurisdiction to review errors in state court decisions in civil cases. Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923)(commonly referred to as the Rooker-Feldman doctrine).

[7] In addressing plaintiff's opposition, the bankruptcy court stated: "The debtor's opposition is unpersuasive. It is unsupported by any competent, admissible evidence. It cites no legal authority. It does not address the issue raised by the motion. Instead, it argues only immigration, constitutional, and other alleged defects which the debtor perceives to have existed in the underlying litigation in the state court family law case." (Id.; see also Deft.'s Stmt. at 4.)

[8] This minute order also states that defendant sought a determination that a state court judgment in the amount of $96,179.05 be deemed non-dischargeable. (Id.) All other references to this figure within this order states the figure was $95,179.05. (Id.) However, the subsequent

dischargeability of a debt under 11 U.S.C. § 523(a)(15).[9]  (Id., Docket No. 68.)  On February 5, 2009, judgment was entered determining that the $96,179.05 owed defendant was non-dischargeable under 11 U.S.C. § 523(a)(15).  (Id., Docket No. 70.)

Disputed Facts

Defendant maintains the issue of the Affidavit of Support was litigated both in the state court dissolution proceeding as well as the bankruptcy proceedings.  Plaintiff contends he was not aware of the Affidavit of Support during the settlement conference in 2007 and thus it could not have been part of the discussion or negotiations held at the May 9, 2007 settlement conference concerning spousal support.  (Docket No. 45 at 3.)

Standards

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

judgment by the bankruptcy court used the $96,179.05 figure.  (Id., Docket No. 70.)

[9] Title 11 U.S.C. § 523(a)(15) provides: "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
    (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless –
    (A)  the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
    (B)  discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;"
Id.

1  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the
2  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made
3  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on
4  file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and
5  upon motion, against a party who fails to make a showing sufficient to establish the existence of
6  an element essential to that party's case, and on which that party will bear the burden of proof at
7  trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the
8  nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a
9  circumstance, summary judgment should be granted, "so long as whatever is before the district
10 court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is
11 satisfied."  Id. at 323.
12      If the moving party meets its initial responsibility, the burden then shifts to the
13 opposing party to establish that a genuine issue as to any material fact actually does exist.
14 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
15      In attempting to establish the existence of this factual dispute, the opposing party
16 may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts
17 in the form of affidavits, and/or admissible discovery material, in support of its contention that
18 the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must
19 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
20 suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
21 Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that
22 the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
23 the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).
24      In the endeavor to establish the existence of a factual dispute, the opposing party
25 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
26 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

8

1  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
2  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
3  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
4  committee's note on 1963 amendments).
5          In resolving the summary judgment motion, the court examines the pleadings,
6  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
7  any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at
8  255, and all reasonable inferences that may be drawn from the facts placed before the court must
9  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.
10 Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam). Nevertheless, inferences are not drawn out
11 of the air, and it is the opposing party's obligation to produce a factual predicate from which the
12 inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
13 Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). If the adverse party does not respond as
14 required, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R.
15 Civ. P. 56(e). "The mere existence of a scintilla of evidence . . . will be insufficient; there must
16 be evidence on which the jury could reasonably find for [the opposing party]." Anderson v.
17 Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).
18         Finally, to demonstrate a genuine issue, the opposing party "must do more than
19 simply show that there is some metaphysical doubt as to the material facts . . . . Where the record
20 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
21 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).
22         Under federal law, immigrants who are likely to become a public charge are
23 ineligible for admission into the United States, 8 U.S.C. § 1182(a)(4), unless their applications
24 for admission are accompanied by an Affidavit of Support Form I-864, see 8 U.S.C.
25 §§ 1182(a)(4)(B)(ii), 1183a(a) 1. A person petitioning for the admission of a family-sponsored
26 immigrant must also sign a Form I-864 affidavit. 8 U.S.C. 1182(a)(4)(C)(ii). This affidavit is

9

considered a legally enforceable contract between the sponsor and the sponsored immigrant. Shumye v. Felleke, 555 F.Supp.2d 1020, 1023 (N.D.Cal. 2008). The signing sponsor submits himself to the personal jurisdiction of any federal or state court in which a civil lawsuit to enforce the affidavit has been brought. See 8 U.S.C. § 1183a(a)(1)(C). The sponsor's obligation under the affidavit does not terminate in the event of divorce. See Shumye, 555 F.Supp.2d at 1024.

By this action, plaintiff seeks enforcement of the Affidavit of Support.

Defendants argue the court should apply the reasoning of In re Schwartz, 2008 WL 5582733 (1st Cir.BAP (Mass.). In Schwartz, the Bankruptcy Appellate Panel of the First Circuit Court of Appeals held that Ms. Schwartz' Affidavit of Support claims were barred under either Rooker-Feldman doctrine or the doctrine of res judicata. Id. If the Affidavit of Support had been considered by the divorce court, Ms. Schwartz' claim was barred by Rooker-Feldman. However, even if the Affidavit of Support had not been submitted in the divorce proceedings, the claim was barred under res judicata because it "prohibits all parties and their privies from relitigating issues which were raised or could have been raised in a previous action, once a court has entered a final judgment on the merits in the previous action." Schwartz at *7, citing FDIC v. Shearson-Amer. Express, Inc., 996 F.2d 493, 497 (1st Cir. 1993).

Under the doctrine of res judicata, "'[a] final judgment on the merits bars a subsequent action between the same parties or their privies over the same cause of action.'" Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1398 (9th Cir. 1992) (quoting Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518 (9th Cir. 1985)). The doctrine of res judicata consists of two concepts, issue preclusion or collateral estoppel, and claim preclusion. Migra v. Warren City School District Board of Education, 465 U.S. 75, 77 n.1 (1984). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." Id. "Claim preclusion bars the assertion of any theory of recovery that could have been asserted in the first action." Fund for Animals, 962 F.2d at 1398 (citing Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988)).

10

1    When a state court judgment is the source of the claimed res judicata, 28 U.S.C.
2    § 1738 provides that a federal court must give the state court judgment the same full faith and
3    credit as it would be entitled to in the courts of the state in which it was entered.  See Allen v.
4    McCurry, 449 U.S. 90, 96 (1980).  Under California law, the application of res judicata depends
5    upon three factors:  (1) whether there is a final judgment on the merits in the earlier proceeding;
6    (2) whether the claims made in the subsequent action were litigated and decided in the first
7    proceeding, or could have been; and (3) whether the parties against whom the principle is
8    invoked were parties to the first adjudication or are in privity with such parties.  Bernhard v.
9    Bank of America Nat. Trust & Savings Ass'n, 19 Cal. 2d 807, 813 (1942).

10   The concept of res judicata as applied in California also focuses on the "primary
11   right" involved.

> [I]f two actions involve the same injury to the plaintiff and the
> same wrong by the defendant then the same primary right is at
> stake even if in the second suit the plaintiff pleads different
> theories of recovery, seeks different forms of relief and/or adds
> new facts supporting recovery.

Eichman v. Fotomat Corp., 147 Cal.App.3d 1170, 1174 (1983).  If the same primary right is
involved in two actions, judgment in the first bars consideration of all matters that were raised or
could have been raised in the first suit.  Id. at 1175.

Here, however, both the state court and the bankruptcy court refused to hear
plaintiff's claim concerning the Affidavit of Support, claiming lack of jurisdiction.  Defendant
has failed to demonstrate that this claim was litigated and decided by either court; thus, the claim
cannot be barred by the doctrine of res judicata.

Defendant's claim under collateral estoppel also fails.  While defendant argues
that the parties' agreement concerning spousal support resolved the Affidavit of Support, the
agreement does not expressly address the Affidavit of Support.  As noted above, defendant's
obligation under the affidavit does not terminate in the event of divorce.  See Shumye, 555
F.Supp.2d at 1024.  Defendant has provided no evidence to demonstrate the Affidavit of Support

was known to plaintiff and specifically negotiated during the judicially-supervised settlement conference. Moreover, plaintiff claims he was unaware of the Affidavit of Support as of the date of the mandatory settlement conference. The record demonstrates the Affidavit of Support was not presented to the state court for consideration until November of 2007. In addition, plaintiff attempted to litigate the claim of Affidavit of Support in state court, but the state court refused to hear it, claiming lack of jurisdiction. Thus, this court cannot find that plaintiff "could have" brought his claim in state court but did not; rather, he attempted to, but was denied hearing on the merits.

Defendant's claim that plaintiff's Affidavit of Support claim is barred by Rooker-Feldman also fails because defendant has failed to demonstrate that either the state court or the bankruptcy court actually decided plaintiff's claim under the Affidavit of Support.

However, this court finds that plaintiff's action is barred by the doctrine of judicial estoppel because of his failure to list the Affidavit of Support claim as an asset in his bankruptcy petition. The record demonstrates the following undisputed facts:

1. Plaintiff's family law attorney presented the Affidavit of Support (Form I-864) as evidence in the state court action on November 29, 2007. (Docket No. 45 at 3.) This is the earliest date the record demonstrates plaintiff was aware of the Affidavit of Support.

2. On February 5, 2008, plaintiff filed for bankruptcy. Case No. 08-21325-B-7.[10] Plaintiff did not list the Affidavit of Support as an asset in the bankruptcy proceedings. (Id., Petition filed February 5, 2008, at Schedule B, page 1.)

3. On March 14, 2008, plaintiff filed an Amended Schedule B, but again failed to list the Affidavit of Support as an asset. (Id., Amended Schedule B at 1.)

/////

---

[10] A court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). All information regarding bankruptcy filings were accessed directly from the Bankruptcy Court using CM/ECF.

4. On May 12, 2008, plaintiff filed an Answer in Adversary Proceeding No. 08-02206-B. (Id., Docket No. 7.) Plaintiff did not mention the Affidavit of Support. (Id.)

5. Plaintiff's discharge in bankruptcy was granted on May 20, 2008. (Case No. 08-21325-B-7, Docket No. 17.)

6. On June 3, 2008, plaintiff filed a supplemental declaration to his answer in Adversary Proceeding 08-02206-B. (Id., Docket No. 10.) Plaintiff noted, for the first time in the Adversary Proceeding, that defendant sponsor had signed an Affidavit of Support (Form I-864). (Id. at 2-3.) Plaintiff argued that the Affidavit of Support was a legal and binding contract requiring defendant to pay plaintiff support and unaffected by the divorce decree. (Id. at 2-3.)

7. On August 18, 2008, plaintiff filed a "Request to null and void the state court's decree," in which he raised, for the first time, the Affidavit of Support (Form I-864) in his bankruptcy Case No. 08-21325-B-7. (Id., Docket No. 27.) Plaintiff recounted his experience in state court and alleged the proceeding was unconstitutional. (Id.)[11]

8. On August 27, 2008, plaintiff filed a reply memorandum in which he reiterated his view that the state court judgment should be rendered null and void, and claimed his civil rights had been violated. (Case No. 08-21325-B-7, Docket No. 30.) Plaintiff also argued that his right to support under the Affidavit of Support was unaffected by the judgment of divorce. (Id. at 7.)

9. On September 2, 2008, defendant's motion for relief was denied without prejudice. (Case No. 08-21325-B-7, Docket No. 33.) The bankruptcy court denied plaintiff's request based on the Rooker-Feldman doctrine. (Case No. 08-21325-B-7, Docket No. 33; see also Deft.'s Stmt., at 3.)[12]

/////

---

[11] This filing was also made in Adversary Proceeding 08-02206, Docket No. 25.

[12] The same order was issued in Adversary Proceeding No. 08-02206-B. (Id., Docket No. 26.)

10. On September 9, 2008, defendant renewed her motion to annul the automatic stay. (Case No. 08-21325-B-7, Docket No. 37.) On September 25, 2008, plaintiff filed opposition, again arguing defendant was required to support plaintiff under the Affidavit of Support. (Id., Docket No. 44.) Plaintiff again argued concerning events that took place in the state court action. (Id.) On October 10, 2008, plaintiff filed a reply. (Id., Docket No. 47.)

These undisputed facts demonstrate that plaintiff did not list his Affidavit of Support claim on the schedule of assets in his bankruptcy proceedings or on his amended schedule. The Affidavit of Support claim plaintiff pursues in this action was properly an asset of the bankruptcy estate. Whether or not plaintiff could have claimed an exemption for this support income, his failure to make such a claim in the bankruptcy proceedings precluded the trustee from objecting to such an exemption and having a determination made as to whether this asset was in fact exempt. See generally Taylor v. Freeland & Kronz, 503 U.S. 638 (1992); see also 11 U.S.C. § 522 (claims of exemption in bankruptcy proceedings); Bankruptcy Rule 4003(b) (as general rule, trustees and creditors must file objections within thirty days after meeting of creditors).

The record demonstrates plaintiff has taken inconsistent positions in the bankruptcy proceedings and in this action, and attempted to use his bankruptcy proceedings to avoid a set-off against any amounts he may be due under the Affidavit of Support. The court thus finds plaintiff should be barred by the doctrine of judicial estoppel from pursuing his present claim against defendant. See generally Hamilton v. State Farm Fire & Casualty Company, 270 F.3d 778, 784-85 (9th Cir. 2001).

The court turns now to plaintiff's remaining claims. Plaintiff claims defendant has violated his civil rights.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the

>Constitution . . . shall be liable to the party injured in an action at
>law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, plaintiff's claims fail because defendant is not a state actor, despite plaintiff's efforts to describe her as one.

Finally, plaintiff seeks, *inter alia*, orders for unpaid spousal support, removal of debt from his name, emotional distress damages, attorneys fees incurred in family court, and reinstatement on defendant's insurance policy.

As noted above, a federal district court does not have jurisdiction to review errors in state court decisions in civil cases. Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923). "The district court lacks subject matter jurisdiction either to conduct a direct review of a state court judgment or to scrutinize the state court's application of various rules and procedures pertaining to the state case." Samuel v. Michaud, 980 F. Supp. 1381, 1411-12 (D. Idaho 1996), aff'd, 129 F.3d 127 (9th Cir. 1997). See also Branson v. Nott, 62 F.3d 287, 291-92 (9th Cir.1995) (finding no subject matter jurisdiction over section 1983 claim seeking, inter alia, implicit reversal of state trial court action); MacKay v. Pfeil, 827 F.2d 540, 544-45 (9th Cir. 1987). That the federal district court action alleges the state court's action was unconstitutional does not change the rule. Feldman, 460 U.S. at 486. Moreover, claims raised in federal district court need not have been argued in the state judicial proceedings to be barred by the Rooker-Feldman doctrine. Id. at

483-84 & n.16. If federal claims are "inextricably intertwined" with a state court judgment, the federal court may not hear them. Id. "[T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

Stripped to its essence, these remaining claims are for federal court review of state court proceedings. As is evident from plaintiffs' complaint, plaintiff seeks to vacate or amend a judgment entered in state court proceedings. The court finds the above claims amount to an attempt to litigate in federal court matters that are inextricably intertwined with state court decisions. These claims should be barred under the Rooker-Feldman doctrine.

The court notes that plaintiff is presently unemployed despite his continued efforts to seek employment. Because plaintiff is proceeding pro se, and the instant issues were complex, the court should deny defendant's request for attorney's fees and costs. Both sides should bear their own fees and costs.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's request for attorney's fees and costs be denied; defendant's May 2, 2009 motion for summary judgment be granted, and plaintiff's May 18, 2009 motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 4, 2009.

001; mergia.msja

UNITED STATES MAGISTRATE JUDGE